No. 20,069.

CARRIE WHITSEL, *Appellee*, v. D. M. WATTS, *Appellant*.

SYLLABUS BY THE COURT.

1. DAMAGES—*Fright—Mental Anguish—Bodily Injuries.* In general there can be no recovery for fright or mental anguish unless it results in or is accompanied by bodily injury.

2. SAME—*Extreme Fright—Willful Negligence—Bodily Injuries—Proximate Cause.* A recovery may be had for bodily injuries which are the natural and proximate result of extreme fright caused by negligence, and especially where the fright is caused by willful wrong or an act so grossly negligent as to show utter indifference to consequences.

Appeal from Bourbon district court; CHARLES E. HULETT, judge. Opinion filed July 8, 1916. Affirmed.

*A. M. Keene*, of Fort Scott, for the appellant.
*Hubert Lardner*, of Fort Scott, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Carrie Whitsel recovered a judgment against D. M. Watts for $225 as damages for injuries which he is alleged to have willfully and maliciously inflicted upon her. Defendant appeals and insists that the evidence did not warrant the verdict of the jury and the judgment of the court and that several rulings made during the trial were erroneous.

It appears that defendant held a mortgage on some hogs belonging to the plaintiff's husband and that accompanied by a constable he visited the plaintiff's home when her husband was absent and undertook to obtain possession of the mortgaged hogs. Upon arriving at the place the constable went into the house and told the plaintiff of the purpose of their

visit, but the plaintiff refused to surrender possession of the hogs. The interview between them occurred in the yard between the house and the gate near which the defendant was seated in a buggy. According to the plaintiff's testimony the defendant, upon learning of the plaintiff's refusal to give possession of the hogs, jumped out of his buggy, ran towards the plaintiff in an angry, threatening manner, swearing and shaking his fist and saying: "You are fooling with the wrong person this time." She was greatly frightened, turned and ran into the house, closing and fastening the door, and then collapsed. Her husband returned shortly after the occurrence and found her in an unconscious state, and when she became conscious she was suffering intense pain and within a few hours a miscarriage and subsequent illness resulted.

Defendant insists that he inflicted no bodily injury upon her, that no physical injury was in fact threatened, that there was no assault upon her and that proof of a mere fright furnishes no basis for a recovery. It has long been the rule here that there can be no recovery for fright or mental anguish unless it results in or is accompanied by physical injury to the person. (*Shelton v. Bornt*, 77 Kan. 1, 93 Pac. 341.) The plaintiff, however, is not asking a recovery for fright alone, but for the personal injuries directly resulting from fright caused by the willful tort of the defendant. It is argued that as the acts of the defendant did not amount to an assault she has no right to recover; but the defendant's liability does not depend upon whether his wrongful onset constituted an assault. The plaintiff is seeking to enforce a civil liability for the consequences of the wrong and the general rule is that a wrongdoer is liable in damages for injuries which are the natural and reasonable consequences of his wrongful act, whatever name may be fittingly applied to the wrong. Taking the testimony of the plaintiff, as the jury did, the defendant advanced upon the plaintiff with clenched fist in a threatening manner, at the same time using violent, abusive and insulting language towards the plaintiff which she says led her to fear that he would strike and injure her and the result was the nervous prostration and miscarriage. A physician testified that miscarriages do result from fright and mental disturbances. In

1 Thompson's Commentaries on the Law of Negligence, § 156, it is said:

"Not only will every competent physician or surgeon that can be summoned, testify that a severe fright or nervous shock has a tendency to produce a miscarriage in a pregnant woman, but it is a matter so well known that it may be rested upon common observation; and every court ought to take judicial notice of such a fact."

There is a conflict in the authorities in regard to whether there can be a recovery for physical injuries resulting from fright where the act causing the fright was merely negligent and not willful, and differences of opinion as to what constitutes a physical injury and whether certain injuries can be regarded as the proximate result of the negligence which caused the fright; but the great weight of authority is that if the bodily injury is the direct and reasonable consequence of the fright caused by the negligence a recovery may be had although the negligence may have been unintentional. (Notes, 3 L. R. A., n. s., 49; 22 L. R. A., n. s., 1073; 23 L. R. A., n. s., 667; 24 L. R. A., n. s., 1159; 12 Ann. Cas. 741; Ann. Cas. 1913 E, 505; *G. C. & S. F. Ry. Co. v. Hayter*, 93 Tex. 239, 54 S. W. 944, 77 Am. St. Rep. 856; 8 R. C. L. § 81.) Although the authorities are in conflict as to injuries resulting from fright where fright is caused by a merely negligent act, there is general agreement in the cases that a recovery may be had where the injury results from fright caused by a willful wrong or an act so grossly negligent as to show utter indifference to consequences. (*Lonergan v. Small*, 81 Kan. 48, 105 Pac. 27; Notes, 3 L. R. A., n. s., 66; Ann. Cas. 1913 E, 506; 13 Cyc. 41, 44.) The testimony produced by the plaintiff tended to establish that the fright of the plaintiff was caused by the intentional wrong of the defendant, and the finding of the jury is that he acted wantonly and with the intention of injuring the plaintiff. It follows that he is liable for the injuries which resulted from his wrong.

There is complaint that the plaintiff's husband was allowed to testify to statements made by her which are said to be of a self-serving character. Those objected to were exclamations of pain and acts of the plaintiff indicating that she was suffering pain before the miscarriage; also requests that he obtain medicine or some relief for her. Husband and wife are

not allowed to testify for or against each other concerning communications made by one to the other during the marriage, and one or two of the statements in question might be regarded as communications, but they can not have been prejudicial. They only went to show the labor pains endured by the plaintiff about the time of the miscarriage, and as to that there can be no controversy. Only material errors are available for a reversal.

The judgment is affirmed.