NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180110-U

NO. 4-18-0110

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 24, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| DARRYL KELLY, | ) | No. 17CF122 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, concluding the State met its burden of proving
defendant guilty beyond a reasonable doubt of aggravated battery of a child.

¶ 2     In April 2017, the State charged defendant, Darryl Kelly, with one count of
aggravated battery and two counts of domestic battery.  Following a December 2017 bench trial,
the trial court found defendant guilty.  The court sentenced defendant to two years of probation
with a suspended 180-day term of imprisonment.

¶ 3     Defendant appeals, arguing the State failed to prove him guilty beyond a
reasonable doubt of aggravated battery.  For the following reasons, we affirm the trial court's
judgment.

¶ 4                                    I. BACKGROUND

¶ 5        In April 2017, the State charged defendant with one count of aggravated battery (720 ILCS 5/12-3.05(b)(2) (West 2016)), and two counts of domestic battery (*id.* §§ 12-3.2(a)(1), (2). In December 2017, the matter proceeded to a bench trial where the court heard the following evidence.

¶ 6        S.L. testified she was the mother of six children, including D.L. who was born on November 11, 2016. Defendant was the father of two of S.L.'s children. In March 2017, S.L. lived with defendant in Pontiac, Illinois. In April 2017, S.L., defendant, and two children were in a vehicle on their way home, and S.L. and defendant began arguing. When they arrived at home, S.L. took the children inside, then went back outside to continue arguing with defendant. S.L. testified she and defendant were both angry and she pushed over defendant's motorized bicycle.

¶ 7        S.L. reentered the home and went to the living room where the children watched cartoons. According to S.L., she heard defendant enter the home, but he did not say anything. S.L. testified she held D.L. in her arms and knelt to remove her three-year-old daughter's coat. S.L. held D.L. on her shoulder as she stood up. S.L. testified she now believed her purse was thrown at her. At the time, S.L. believed defendant punched her, so she contacted the police. S.L. testified she was struck on her back and neck in the same area where she held D.L.

¶ 8        S.L. was very upset and immediately ran outside and called the police. The State admitted into evidence a statement written by S.L. describing the incident. In part, the statement read "[defendant] came into the house while my back was turned and close[-]hand punched me in the back right side of my neck also hitting my infant son." S.L. testified she could not say with certainty D.L. was struck because her back was turned, but the incident caused D.L. to cry. The State also admitted into evidence a recording of the 911 call. S.L. acknowledged she was

very upset and sounded as though she was going to cry. The recording indicated D.L. had a reddened spot on his head.

¶ 9    S.L. acknowledged she did not see who or what hit her because her back was turned. She further testified she could not see the back of her neck, so she could not say she suffered injury by sight. According to S.L., she assumed D.L. had been hit but she did not know that for sure. S.L. reiterated she was hit in the same area where D.L.'s head rested. Although she had no large bruises, S.L. testified it hurt when she was hit. According to S.L., her purse contained her cell phone and wallet and was heavy enough to hurt if struck as described.

¶ 10    Pontiac police officer Derek Schumm testified he responded to a domestic report regarding defendant and S.L. When Schumm arrived on the scene, S.L. was upset and holding a child less than a year old. Schumm described S.L. as flustered, crying at times, and irritated. S.L. told Schumm she got into an argument with defendant outside the apartment, she knocked defendant's bicycle over on her way back inside, defendant followed her, and punched her in the back of the neck with a closed fist, striking D.L. According to Schumm, S.L. did not seem at all uncertain that she had been punched and D.L. was struck. Schumm testified he observed light marks on the back of S.L.'s neck and on D.L.'s head. Schumm described the marks as redness and light bruising.

¶ 11    Following closing arguments, the trial court found S.L.'s testimony incredible and found it evident she was "back-pedaling on her story." The court found credible the evidence that was not subject to change, including the 911 call and S.L.'s written statement, which were corroborated by Schumm's testimony. The circumstantial evidence was strong that defendant struck S.L. where S.L. testified defendant was in the house and accounted for the whereabouts of herself and the two children. The court further concluded the State established D.L. was under

the age of 13. The court reiterated it found S.L.'s testimony about bodily harm incredible and credited Schumm's testimony—corroborated by the 911 call and written statement—that D.L. and S.L. both had lights marks. The court concluded the State met its burden of proving defendant guilty beyond a reasonable doubt and found him guilty on all three counts.

¶ 12　　　　In January 2018, the trial court sentenced defendant to a period of 24 months' probation and 180 days' imprisonment in the Livingston County jail, with credit for 9 days served and the balance stayed pending compliance.

¶ 13　　　　This appeal followed.

¶ 14　　　　　　　　　　　　II. ANALYSIS

¶ 15　　　　On appeal, defendant argues the State failed to prove him guilty beyond a reasonable doubt of aggravated battery. Specifically, defendant argues (1) the evidence did not establish he knew his act would result in D.L. being struck and (2) the transferred intent doctrine did not apply.

¶ 16　　　　　　　　　　A. Sufficiency of the Evidence

¶ 17　　　　Defendant argues the State failed to prove that defendant knew S.L. was holding D.L. or that his act would result in D.L. being struck. Specifically, defendant argues there was no direct or circumstantial evidence proving he knew S.L. held D.L. at the time she was struck.

¶ 18　　　　When considering whether sufficient evidence supported a conviction, "our function is not to retry the defendant." *People v. Sutherland*, 223 Ill. 2d 187, 242, 860 N.E.2d 178, 217 (2006). Instead, we determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

We allow all reasonable inferences in favor of the State. *People v. Beauchamp*, 241 Ill. 2d 1, 8, 944 N.E.2d 319, 323 (2011). The finder of fact determines the credibility of witnesses and that finding is entitled to great weight. *People v. Smith*, 185 Ill. 2d 532, 542, 708 N.E.2d 365, 370 (1999). We reverse only where the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt as to the defendant's guilt. *People v. Evans*, 209 Ill. 2d 194, 209, 808 N.E.2d 939, 947 (2004).

¶ 19 In relevant part, section 12-3.05 of the Criminal Code of 2012 provides:

"A person who is at least 18 years of age commits aggravated battery when, in committing a battery, he or she knowingly and without legal justification by any means:

***

(2) causes bodily harm or disability or disfigurement to any child under the age of 13 years or to any person with a severe or profound intellectual disability." 720 ILCS 5/12-3.05(b)(2) (West 2016).

To sustain a conviction for aggravated battery of a child, the State must prove the following elements: (1) the defendant knowingly caused bodily harm to the victim, (2) when the defendant did so, he was of the age of 18 years or older, and (3) when the defendant did so, the victim was under 13 years. Illinois Pattern Jury Instructions, Criminal, No. 11.26 (4th ed. 2000).

¶ 20 As noted above, defendant argues there is insufficient evidence to prove he knowingly caused bodily harm to a child. Put another way, defendant argues the statute requires that the State proved defendant caused bodily harm to a victim he knew to be a child.

- 5 -

¶ 21    To resolve this argument, we look to another provision of the aggravated battery statute.  "Before 2006, a person committed aggravated battery if he '[k]nowingly and without legal justification and by any means cause[d] bodily harm to an individual of 60 years of age or older.'  720 ILCS 5/12-4(b)(10) (West 2004).  This earlier version of the statute was interpreted to mean that, as long as the victim was 60 years of age or older and the defendant committed a battery, the defendant was guilty of aggravated battery."  *People v. Jasoni*, 2012 IL App (2d) 110217, ¶ 14, 974 N.E.2d 902.  However, the statute was subsequently amended to provide "that a person commits aggravated battery when, in committing a battery, the person '[k]nows the individual harmed to be an individual of 60 years of age or older.' "  *Id.* (quoting 720 ILCS 5/12-4(b)(10) (West 2008)).  The *Jasoni* court noted that the amendment inserted the word "knows" directly before the phrase "the individual battered to be a person 60 years of age or older," which made clear the word "knows" referred to the victim's age.  *Id.* ¶ 16.  In the prior version, "the adverb 'knowingly' was located before the verb 'causes' and therefore modified 'causes bodily harm.' "  *Id.*  Accordingly, the court held that the amended statute required a defendant to know the victim was 60 years of age or older before an aggravated battery conviction could stand.  *Id.* ¶ 18.

¶ 22    In this case, the aggravated battery of a child provision is more similar to the pre-amendment version of the aggravated battery of a person over the age of 60 statute.  Here, the word "knowingly" comes before the verb "causes" and therefore modifies "causes bodily harm." The legislature clearly could have amended this statutory language to provide that a person commits aggravated battery when, in committing a battery, the person knows the individual harmed to be an individual of 13 years of age or younger, as it amended the aggravated battery of a person 60 years of age or older statute.  See *People v. Harris*, 2017 IL App (1st) 140777, ¶ 45,

- 6 -

74 N.E.3d 1 (finding that the legislature could have amended the aggravated vehicular hijacking statute to clarify a knowledge requirement). However, the legislature has not seen fit to so amend the aggravated battery of a child statute. Therefore, we conclude the aggravated battery of a child statute does not require that a defendant have specific knowledge of the victim's age to be held liable for aggravated battery.

¶ 23        We note that, if the statute required specific knowledge of the victim's age, the State met its burden in proving defendant guilty of aggravated battery of a child. Defendant argues there was no evidence that he had knowledge that S.L. held D.L. at the time he struck her. However, this ignores S.L.'s testimony that D.L.'s head rested on her shoulder in the exact area she was struck. The trial court, as the finder of fact, was in the best position to observe the witnesses' demeanor and judge their credibility. *Smith*, 185 Ill. 2d at 542. Although the report of proceedings contains descriptions of the witnesses' gestures made during testimony, it is not the same as observing a witness in person. A rational trier of fact could have concluded from S.L.'s testimony that defendant knew he was striking a child when he struck S.L. in the "exact area" where D.L.'s head rested. Based on the record before us, we cannot say the evidence was so unsatisfactory or improbable that it raises doubt as to defendant's guilt. *Evans*, 209 Ill. 2d at 209. Nonetheless, we turn now to the doctrine of transferred intent.

¶ 24                              B. Transferred Intent

¶ 25        Defendant argues the doctrine of transferred intent does not apply in this case because (1) aggravated battery of a child has an additional, specific mental state than simple battery, (2) transferred intent does not transfer across different offenses, and (3) the result was not natural and probable. Defendant's argument that the aggravated battery of a child statute has

a specific intent requirement is closely related to the argument we rejected above. However, we turn now to further address defendant's claims.

¶ 26 Illinois courts have consistently recognized the doctrine of transferred intent holds one liable for the natural and probable consequences of an unlawful act even though they may not have been intended. *People v. Hickman*, 9 Ill. App. 3d 39, 44, 291 N.E.2d 523, 527 (1973). "[W]here one in the commission of a wrongful act commits another wrong not meant by him, or where in the execution of an intent to do wrong, an unintended act resulting in a wrong ensued as a natural and probable consequence, the one acting with wrongful intent is responsible for the unintended wrong." *Id.* Where a defendant intends to commit a simple battery against another, he or she remains liable for the unintended consequences that are the natural and probable consequence of the act. *People v. Dorn*, 378 Ill. App. 3d 693, 698, 883 N.E.2d 584, 588 (2008).

¶ 27 Defendant contends transferred intent does not apply here because aggravated battery of a child requires the defendant have the specific intent to cause bodily harm to a person he knew to be a child. We already concluded the statute does not require the defendant have knowledge that the victim is a child. We similarly conclude the statute does not require such specific intent.

¶ 28 A person commits battery if he or she knowingly without legal justification by any means causes bodily harm to an individual. 720 ILCS 5/12-3(a) (West 2016). A person commits domestic battery if he or she knowingly without legal justification by any means causes bodily harm to any family or household member. *Id.* § 12-3.2(a)(1). A person commits aggravated battery of a child if he or she knowingly without legal justification by any means causes bodily harm to any child under the age of 13. *Id.* § 12-3.05(b). Defendant was charged with having acted knowingly. "We have previously held, in the context of the aggravated battery

- 8 -

statute, that when a statute is defined in terms of a particular result, a person is said to act knowingly when he is consciously aware that his conduct is practically certain to cause the result." *People v. Psichalinos*, 229 Ill. App. 3d 1058, 1067, 594 N.E.2d 1374, 1381 (1992).

¶ 29 Defendant argues the requirement that a defendant acts knowingly applies both to "bodily harm" and to "battering a child." However, the only case defendant cites is *Psichalinos*, which he argues was wrongly decided. As noted above, the *Psichalinos* court found that when a statute is defined in terms of a particular result, a defendant acts knowingly when he is consciously aware that his conduct is practically certain to cause the result. *Id.* The court then concluded that the defendant acted knowingly when he closed his hand into a fist and swung at Lena Alsen. *Id.* at 1068. It was not unreasonable for the trial court to conclude the defendant was consciously aware that his conduct was practically certain to cause a particular result. *Id.* However, the defendant missed and struck a child. *Id.* "The result which his conduct was practically certain to cause, great bodily harm to Lena Alsen, became great bodily harm to" the child. *Id.* The court concluded the doctrine of transferred intent applied under these circumstances and the State proved defendant acted knowingly beyond a reasonable doubt. *Id.*

¶ 30 We do not think *Psichalinos* was wrongly decided. Defendant asserts the result of his actions in this case included that the victim was a child. However, adopting that reasoning would essentially eliminate the doctrine of transferred intent. The statute requires proof that defendant knowingly caused bodily harm. That is, defendant must be consciously aware that his conduct was practically certain to cause bodily harm. Whether defendant punched S.L. with a closed fist or struck her with her purse, it is not unreasonable to conclude that defendant was consciously aware that his actions were practically certain to cause bodily harm. Although defendant may not have intended to hit D.L., we conclude he acted with the intent to cause

- 9 -

bodily harm and is therefore "responsible for the unintended wrong." *Hickman*, 9 Ill. App. 3d at 44.

¶ 31    Defendant argues this court should reject the State's reliance on *Dorn*, 378 Ill. App. 3d 693, and instead rely on *People v. Lovelace*, 251 Ill. App. 3d 607, 622 N.E.2d 859 (1993). Defendant asserts this court should disregard *Dorn* because the issue in that case was whether the proper jury instruction was given, and not whether the evidence established the *mens rea* of the crime beyond a reasonable doubt. We agree. However, *Lovelace* also addressed whether the proper jury instruction was given, and not whether the evidence established the *mens rea* of the crime beyond a reasonable doubt. Accordingly, we decline to address either case as neither discusses the issue raised in this case.

¶ 32    Defendant also argues transferred intent only applies where the unintended wrong is the "necessary and probable" consequence of an intended wrong. Defendant asserts striking D.L. was not a necessary and probable consequence of striking S.L. because he did not foresee D.L. being struck because he was unaware that S.L. held D.L. However, the evidence showed defendant, S.L., and the two children had just arrived home when the incident occurred. Defendant knew S.L. took both children into the apartment before she went back outside to continue their argument. S.L. testified she went back inside and bent over to remove her daughter's coat while holding D.L. The testimony established D.L. was an infant and S.L. held him over her shoulder. It was not unreasonable for the trier of fact to conclude defendant was consciously aware that his conduct of striking S.L. while she held the infant was likely to cause bodily harm to D.L. Indeed, it was entirely foreseeable that S.L. would settle the children, including removing the infant from a car seat, upon returning to the home. Moreover, defendant

- 10 -

again ignores the testimony that D.L.'s head rested in the "exact spot" defendant struck S.L. A necessary and probable consequence of defendant's action was bodily harm to D.L.

¶ 33 Finally, defendant asserts transferred intent does not transfer across different offenses. However, the transferred intent doctrine applies to different offenses so long as they have the same mental state. *People v. Varnell*, 54 Ill. App. 3d 824, 828, 370 N.E.2d 145, 147 (1977) (affirming conviction for aggravated battery under transferred intent where the defendant intended mere assault by firing a gun to frighten a crowd); *People v. Isunza*, 396 Ill. App. 3d 127, 132-33, 917 N.E.2d 1079, 1085 (2009) (affirming conviction for aggravated battery where the defendant only intended to commit criminal damage to property by hitting car window with bat); *Psichalinos*, 229 Ill. App. 3d at 1067 (holding the defendant had the requisite mental state as to the actual victim where the defendant had the requisite mental state as to the intended victim).

¶ 34 For the foregoing reasons, we conclude the State proved defendant guilty of aggravated battery of a child beyond a reasonable doubt, where the doctrine of transferred intent established defendant knowingly struck S.L., was consciously aware his action was practically certain to result in bodily harm, and bodily harm to D.L. was a necessary and probable result of defendant's action. Accordingly, we affirm the judgment of the trial court.

¶ 35 III. CONCLUSION

¶ 36 For the reasons stated, we affirm the trial court's judgment.

¶ 37 Affirmed.